O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELE HEARD, an individual,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>QBE INSURANCE CORPORATION, a Pennsylvania corporation, and DOES 1 through 15, inclusive,<br><br>　　　　　　　Defendants. | Case No. 5:21-CV-01980-MEMF(PLAx)<br><br>**ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS [ECF NO. 25]** |

　　Before the Court is a Motion for Judgment on the Pleadings filed by Defendant QBE Insurance Corporation. ECF No. 25. For the reasons set forth below, the Court DENIES the Motion for Judgment on the Pleadings.

/ / /

/ / /

1

## I. Background

### a. Factual Background[1]

Plaintiff Michele Heard ("Heard") is an individual residing in the County of San Bernardino, California. Compl. ¶ 1. Defendant QBE Insurance Corporation ("QBE") is a corporation organized under the laws of the State of the Pennsylvania, with a principal place of business located in the State of Wisconsin. *Id.* ¶ 2. QBE is licensed to transact business in the State of California. *Id.* This suit arises from the denial of an insurance claim submitted to QBE for damage caused to Heard's single-family home located at 12968 Shasta Drive, Rancho Cucamonga, County of San Bernardino (the "Property"). *Id.* ¶ 5. The Property is titled in the name of Heard's husband, Stephen Heard, and was purchased using community assets after their marriage. *Id.* ¶ 6.

QBE issued a homeowner's policy bearing number QHP1514890, which insured the Property against risks of physical loss occurring between January 19, 2020, to January 19, 2021. *Id.* ¶ 7; ECF No. 1 at Exhibit A at Exhibit 1 ("Policy," Bates number COMP001, ECF p.23). On December 4, 2020, law enforcement officers entered the Property to conduct an arrest on Stephen Heard. *Id.* ¶ 15. Stephen Heard has remained in custody since his arrest. *Id.* ¶ 16. During the arrest, SWAT officers broke several windows around the home and tossed tear gas canisters inside the residence, chemically contaminating the rooms, walls, appliances, air conditioning, and flooring. *Id.* ¶ 17. The officers also deployed a tactical robot that caused damage throughout the home. *Id.* As a result of the damage, the home was rendered uninhabitable. *Id.* ¶ 19.

On December 9, 2020, Heard called QBE to inform them about the damage to the Property and submitted a claim under the Policy. *Id.* ¶ 20. QBE commenced an investigation into the claim and decided to accept and pay the claim. *Id.* ¶ 21. QBE then issued two checks to Stephen Heard on January 7, 2021, for $31,230.16 for damage to the Property, and $14,454.67 for repair and/or replacement of the Property's HVAC unit. *Id.* On or around January 15, 2021, Heard received the checks. *Id.*

---

[1] Plaintiff sets forth the following factual allegations in her Complaint. ECF No. 1, Notice of Removal, Exhibit B ("Compl.").

However, after Heard notified QBE that she was married to Stephen Heard and submitted a Power of Attorney on his behalf, QBE told Heard that she could not cash the checks issued to Stephen Heard. *Id.* ¶¶ 23–27. From January to May 2021, Heard and QBE continued to dispute whether Heard had verified her marital status to Stephen Heard and whether she was authorized to receive payment. *Id.* ¶¶ 30–40.

On June 23, 2021, QBE sent a letter to Heard, denying coverage on the Property. *Id.* ¶ 43. The letter stated that her claim was exempted under the Policy's "Acts or Decisions" exclusion, which provides as follows:

> 2. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded in this policy is covered.
>
> . . .
>
> b. Act or decisions, including the failure to act or decide, of any person, group, organization, or governmental body;
>
> . . . .

*Id.* ¶¶ 43, 45; Policy at COMP015.

### b. Procedural Background

On August 12, 2021, Heard filed this suit against QBE in the Superior Court of California County of San Bernardino, alleging causes of action for (1) breach of contract and (2) breach of implied covenant of good faith and fair dealing. ECF No. 1, Exhibit 2. On November 22, 2021, QBE filed a Notice of Removal to remove the state civil action to the Central District of California. ECF No. 1.

On August 23, 2022, QBE filed the instant Motion for Judgment on the Pleadings. ECF No. 25-1 ("Motion" or "Mot."). The Motion was fully briefed on September 22, 2022. See ECF Nos. 29 ("Opposition" or "Opp'n"), 31 ("Reply"). The Motion was heard on October 6, 2022 after the Court issued a tentative ruling.

## II.  Applicable Law

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED.

R. Civ. P. 12(c). "Judgment on the pleadings is properly granted when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (internal quotation marks omitted). A court must construe all factual allegations in the pleadings in the light most favorable to the non-moving party. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

A motion under Rule 12(c) is considered "functionally identical" to a motion under Rule 12(b)(6). *Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 883 (9th Cir. 2011) (citing *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)). The key difference between these two motions is just the timing of the filing: a 12(b)(6) motion is before pleadings have closed, and 12(c) motion is after. *See Dworkin*, 867 F.2d at 1192. Accordingly, judgment on the pleadings should be entered when a complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is factually plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

If judgment on the pleadings is appropriate, a court may grant the non-moving party leave to amend, grant dismissal, or enter a judgment. Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Thus, leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. Cty. & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

### III. Discussion

#### a. California law on insurance coverage applies.

The Court finds—and neither QBE nor Heard dispute—that California law governs this dispute. *See Intri-Plex Techs., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) ("Since this is a diversity action the law of the forum state, California, applies."). Under California law, the "interpretation of an insurance policy is a question of law" for the Court. *Waller v. Truck Ins. Exch., Inc.*, 900 P.2d 619 (Cal. 1995). The "goal in construing insurance contracts, as with contracts

generally, is to give effect to the parties' mutual intentions." *Minkler v. Safeco Ins. Co. of Am.*, 232 P.3d 612, 616 (Cal. 2010). "If contractual language is clear and explicit, it governs." *Bank of the W. v. Superior Ct.*, 833 P.2d 545, 552 (Cal. 1992). On the other hand, if the terms are ambiguous or uncertain, they must be interpreted "to protect the objectively reasonable expectations of the insured." *Minkler*, 232 P.3d at 616 (internal quotations omitted).

In order to uphold the reasonable expectations of the insured, "in cases of ambiguity, basic coverage provisions are construed broadly in favor of affording protection, but clauses setting forth specific exclusions from coverage are interpreted narrowly against the insurer." *Minkler*, 232 P.3d at 616. At the outset, the insured maintains the burden of establishing that a claim is within basic coverage. *Id.* The burden then shifts to the insurer to establish that a specific exclusion applies. *Id.*

### b. The Acts or Decisions exclusion does not bar coverage for Heard's damages.

Here, the parties do not dispute that the Policy offers basic coverage over Heard's claim for damages. However, QBE argues that Acts or Decisions exclusion applies to ultimately bar Heard's claim. Mot. at 4. Heard responds that the exclusion is unenforceable as it is overly broad and ambiguous.[2] Opp'n at 5.

---

[2] Heard also argues that her claim does not fall within the language of the provision. The Court finds this argument unavailing. The Complaint details the damage to Heard's property in a section entitled, "The Property is physically damaged by law enforcement," which includes the allegations below:

> 17. To effectuate the arrest of Mr. Heard, law enforcement deployed a SWAT team, armored personnel carriers, and a tactical robot, all of which caused significant damage to the Property. The SWAT officers broke several windows around the home and tossed tear gas canisters inside the residence, which chemically contaminated the rooms, walls, appliances, air conditioning, and flooring inside. Also, the deployed tactical robot caused damage throughout multiple room and hallways inside the home.
>
> 18. The use of tear gas inside the Property further contaminated personal property belonging to Michele and her grandchildren who resided there including, but not limited to, clothing, electronics, and bedding.
>
> 19. As a result of the tear gas contamination, broken windows, and other property damage, the home was rendered uninhabitable beginning on December 4, 20202 for Michele and the children in her custody who she resided with at the Property.

Compl. ¶¶ 17–19. Taking the factual allegations as true—as this Court must—the Court finds that the loss on which Heard seeks to recover was directly caused by the SWAT team, who arrested Stephen Heard. Heard does not dispute these facts and indeed offers them as true in her Complaint. For these reasons, the Court

5

> i. <u>California contract law principles would suggest an extremely broad reading of the exclusion.</u>

In relevant part, the Acts or Decisions exclusion provides, "We do not insure for loss to property . . . caused by . . . . Act or decisions, including the failure to act or decide, of any person, group, organization, or governmental body . . . ." Policy at COMP015.

The Court recognizes that "[a]n insurance company has the right to limit the coverage of a policy issued by it and when it had done so, the plain language of the limitation must be respected." *Cont'l Cas. Co. v. Phoenix Const. Co.*, 296 P.2d 801, 806 (Cal. 1956) (collecting cases). Under this exclusion, QBE is excused from providing coverage for loss caused by the acts or decisions, including the failure to act or decide, of any governmental body. While Heard argues that the term "act" is ambiguous, the Court interprets "act" in its "ordinary and popular sense." *Waller*, 900 P.2d at 627. Far from being an obscure term, the Court finds that "act" does not carry an additional technical meaning that could generate broad confusion. "In seeking to ascertain the ordinary sense of words, courts in insurance cases regularly turn to general dictionaries." *Scott v. Cont'l Ins. Co.*, 51 Cal. Rptr. 2d 566, 569 (Ct. App. 1996). According to Merriam-Webster dictionary, "act" means "the doing of a thing," which the Court agrees is how the term is defined in its "ordinary and popular sense." *Act*, <u>Merriam-Webster Dictionary</u> (11th ed. 2022).

Indeed, it appears this type of Acts or Decisions exclusion clause is often found in insurance coverage agreements and the *exact language* of this provision is found in the International Organization for Standardization ("ISO") insurance policy form language. *See* California Practice Guide: Insurance Litigation Ch. 6B-F, F. Exclusions From Coverage § 6:321 ("Typically excluded are loss or damage caused by: 'Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.' [ISO Form HO 00 03 10 00, Sec. I - Exclusions, ¶ B.2.]").

> ii. <u>The exclusion cannot reasonably be given meaning under established rules of contract construction.</u>

---

finds that the damage caused by the SWAT team would be barred from coverage under the Acts or Decisions Exclusion, if that provision is valid.

Despite this, Heard argues that "the exclusion is unenforceable because coverage under the policy becomes illusory when it is applied." Opp'n at 4.

Importantly, neither party cites to any binding authority addressing the precise question before this Court: Whether the Acts or Decisions exclusion found in Heard's policy is so broad as to be illusory. QBE points to two non-binding decisions—*FlorExpo LLC v. Travelers Prop. Cas. Co. of Am.*, 524 F. Supp. 3d 1051 (S.D. Cal. 2021) and *Stephens v. Liberty Mut.*, 2008 WL 480287 (N.D. Cal. Feb. 19, 2008)—where other district courts applied substantially similar exclusions, which they found to be clear and unambiguous. *See FlorExpo*, 524 F. Supp. 3d at 1060 (joining "the majority of courts analyzing similar clauses . . . find[ing] that the language of this exclusion is unambiguous."); *Stephens*, 2008 WL 480287, at *14 (considering whether Acts or Decisions exclusion applies only to acts of the insured or also third parties) ("Courts have previously found [acts or decisions] policy language to be unambiguous in situations involving third-party negligence."). Those decisions are of limited persuasive value as it appears those courts were not presented with the question of whether the exclusion was so broad as to be illusory.[3] The other cases cited by QBE are also not particularly useful, as they either involve very different (and narrower) exclusion language and/or the question of overbreadth was not presented to the court. For example, in *Alton v. Manufacturers & Merchants Mut. Ins. Co.*, 624 N.E.2d 545 (1993), the Supreme Judicial Court of Massachusetts[4] was tasked with applying a narrower "governmental action" exclusion, and found that the exclusion did apply to damage caused by the police in the course of executing a search warrant. Not only was the exclusion at issue much narrower, it does not appear that the overbreadth question was presented to the court. Although this court is bound by decisions of the California Courts of Appeals, the overbreadth question also appears to not have been presented to the court that decided *Vardanyan v. AMCO Ins. Co.*, 197 Cal. Rptr. 3d 195 (2015), or *Roberts v. Assurance Co. of Am.*, 78 Cal. Rptr. 3d 361 (2008). *See Vardanyan v. AMCO Ins. Co.*, 197 Cal. Rptr. 3d 195 (2015) (considering whether Act or Decisions exclusion applied to damage caused by water leak and not by third party and addressing

---

[3] Another court in this district came to a similar conclusion, but also appears to not have been presented with the overbreadth question. *See Landmark Hosp., LLC v. Cont'l Cas., Co.*, 2002 WL 34404929, at *2 (C.D. Cal. July 2, 2002) ("The Court finds the acts and decisions section of the policy unambiguous and enforceable.").

[4] The Supreme Judicial Court of Massachusetts is the highest court in the Commonwealth of Massachusetts.

1  whether exclusion was inconsistent with the efficient proximate cause doctrine under California
2  law); *Roberts v. Assurance Co. of Am.*, 78 Cal. Rptr. 3d 361 (2008) (considering application of
3  "earth movement" exclusion and "collapse" coverage and mentioning in passing that policy at issue
4  also contained an exclusion for "acts or decisions of any governmental, regulatory or controlling
5  body").

6        The one binding precedent that seems to apply most directly to this case is the California
7  Supreme Court decision in *Safeco Ins. Co. of Am. v. Robert S.*, 28 P.3d 889 (2001). In *Safeco*, the
8  California Supreme Court was faced with the question of whether an exclusion for "any illegal act
9  committed by or at the direction of an insured" was overbroad. The Court determined that it was.
10 The insurer in *Safeco* argued that the Court could give effect to the exclusion despite its overbreadth
11 because even if overbroad, any insured would reasonably expect that the specific type of act at issue
12 in that case—"an accidentally caused death resulting in a conviction for involuntary
13 manslaughter"—would fall within the exclusion. Similarly, QBE argues that to consider any
14 scenario besides the precise one before the Court "mudd[ies] the waters" and is inappropriate. Reply
15 at 5. But in *Safeco*, the California Supreme Court determined that

16/17 > Safeco's view leaves the exclusionary clause without meaning until after an event has occurred. This violates the rule that expectations of the insured are examined at the time the contract is made.

18 *Safeco*, 28 P.3d at 889.

19       Therefore, this Court believes it is obligated to consider the breadth of this provision as
20 written. Given the California Supreme Court's binding determination that an exclusion for "any
21 illegal act committed by or at the direction of an insured" is overbroad—as it could include merely
22 negligent acts—and therefore is invalid as illusory, it follows that the even broader language of Acts
23 or Decisions exclusion in the QBE policy—excluding "any act or failure to act . . . by any person" is
24 also overbroad. *See id.* Although QBE indicates that such language is common, other courts have
25 also indicated it may be impermissibly overbroad. *See Jussim v. Massachusetts Bay Ins. Co.*, 597
26 N.E.2d 1379, 1382 (1992) (holding that the broad Acts or Decisions exclusion "cannot be taken
27 literally"); *see also Mettler v. Safeco Ins. Co. of Am.*, 2013 WL 231111, at *6 (W.D. Wash. Jan. 22,
28 2013) ("[T]he provision appears to be overly broad, ambiguous, and irreconcilable with other policy

provisions and the very concept of an all-risk insurance policy."). Taken literally, this exclusion would appear to include legal and illegal acts, intentional and unintentional acts, and even unintentional failures to act. Governing California law would appear to prohibit this. [5]

        iii.  <u>The overbreadth of the exclusion is not saved by the ensuing loss exception.</u>

Commentary on this provision suggests that it may be saved by the "ensuing loss provision."[6] For example, the authoritative Rutter Guide advises, "Read literally, [this type of]

---

[5] The Court also notes that it appears there may also be more than one reasonable interpretation of this provision. In particular, the Court considers the "theft and vandalism" exclusions found in the same section of the Policy. Those exclusions read as follows:
> We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property. We do not insure, however for loss:
>
> . . . .
>
> 2. Caused by:
>
> . . . .
>
>   a.    Theft in or to a dwelling under construction, or of materials and supplied for use in the construction until the dwelling is finished and occupied;
>   b.    Vandalism and malicious mischief if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;
> . . .
>
> 3. Excluded under Section I – Exclusions.
>   Under items 1. and 2., any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

Policy at COMP012 – COMP013. As discussed, the Acts or Decisions exclusion is set forth under the aforementioned "Section I – Exclusions" in a subsequent page. Policy at COMP014 – COMP015. If the Acts or Decisions exclusion is to be taken literally, and "any act" truly encompasses any act, then it seems additional exclusions for "theft and vandalism" are superfluous and the conditions applied to these exclusions are meaningless. For instance, although the theft exclusion suggests that it is limited to theft in or to a dwelling under construction, in actual fact, theft at any time will be excluded, as theft is necessarily an "act[] . . . of any person." Similarly, although the vandalism exclusion only applies if the dwelling has been vacant for a particular period of time and defines what it means for a dwelling to be vacant, none of that actually matters because any loss caused by vandalism would be excluded under the Acts or Decisions exclusion, as any vandalism is necessarily an "act[] . . . of any person." Similarly, Heard additionally argued at the October 6 hearing that the exclusions for power failure, neglect, war, and intentional loss, found in that same section, would also be rendered superfluous by the Acts or Decisions exclusion. *See* Policy at COMP015.

[6] Heard also argues that even if the Acts or Decisions exclusion applies to the claimed damages, coverage "may nonetheless exist under the Policy exception for 'ensuing loss.'" Opp'n at 11. QBE argues that the exception does not apply.

exclusion would bar coverage for virtually every loss in which human conduct played any part . . . However, [this type of] exclusion typically is subject to an ensuing loss provision." California Practice Guide: Insurance Litigation Ch. 6B-F, F. Exclusions From Coverage § 6:321.1. An "ensuing loss" provision "operates as an exception to the exclusions. The purpose is to restore coverage for losses that flow ('ensue') from an earlier excluded loss but are caused by a covered peril." *Id*. § 6:322.5. Some may argue that the "ensuing loss" provision under the Policy, Compl. ¶ 45, operates as a limiting factor to the broad reach of an exclusion that may otherwise be considered illusory. The provision at issue in *Safeco* does not appear to contain an ensuing loss provision, but there are no cases suggesting that an overly broad exclusion that renders a promise of coverage illusory can be saved by an "ensuing loss" exception. This is particularly the case as the ensuing loss provision is necessarily limited—as QBE argues—to *separate* and *independent* losses only.

To conclude, the Court finds this language is impermissibly overbroad and invalid. Just as in *Safeco*, "In short, because the . . . exclusion cannot reasonably be given meaning under established rules of construction of a contract, it must be rejected as invalid." *Safeco*, 28 P.3d at 889.

    **c. In light of the invalidity of the Acts or Decisions exclusion, QBE's motion with respect to Heard's breach of contract and breach of the implied covenant of good faith and fair dealing claims fails.**

Heard's complaint includes two causes of action for (1) breach of contract and (2) breach of the implied covenant of good faith and fair dealing. *See generally* Compl. Because the Court finds that the Acts or Decisions exclusions does not bar coverage under the Policy, QBE does not prevail, as a matter of law, on these two claims.

    *i. Heard may bring an action for breach of contract.*

---

An "ensuing loss" provision applies "where there is a 'peril,' i.e., a hazard or occurrence which causes a loss or injury, separate and independent but resulting from the original excluded peril, and this new peril is not an excluded one, from which loss ensues." *Acme Galvanizing Co. v. Fireman's Fund Ins. Co.*, 270 Cal. Rptr. 405, 411 (Ct. App. 1990). In Heard's own words, the Property "was rendered uninhabitable" "[a]s a result of the tear gas contamination, broken windows, and other property damage." Compl. ¶ 19. This damage to the property was caused directly by the "acts" of the SWAT team officers and cannot be considered "separate and independent" from the events of the arrest. Accordingly, the Court finds that the "ensuing loss" exception does not apply. In her Opposition, Heard concedes that if the Court defines "act" to mean "the doing of a thing," the ensuing loss exception does not apply. Opp'n at 11. As discussed above, this is the "ordinary and popular" definition of the term "act" and how the Court interprets the term under the exclusion. *See supra* section III.b.i.

"[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011). Because the Court finds that the exclusion does not apply, QBE's denial of coverage on the basis of that exclusion can be the basis of a breach of contract claim. For these reasons, the Court DENIES QBE's Motion, as it relates to the breach of contract claim.

####  ii. Heard may bring an action for breach of the implied covenant of good faith and fair dealing.

"[A]n insurer (like any other party to a contract) owes a general duty of good faith and fair dealing. Moreover, because of the 'special relationship' inherent in the unique nature of an insurance contract, the insurer's obligations attendant to its duty of good faith are heightened." *Love v. Fire Ins. Exch.*, 271 Cal. Rptr. 246, 251–52 (Ct. App. 1990) (internal citations omitted). "Because peace of mind and security are the principal benefits for the insured, the courts have imposed special obligations, consonant with these special purposes, seeking to encourage insurers promptly to process and pay claims." *Id.* at 252. These obligations include: investigating claims thoroughly; refusing to deny coverage based on either unduly restrictive policy interpretations; and creating an unreasonable delay in processing or paying claims. *Id.*

Because the Court finds that the exclusion does not apply, QBE's denial of coverage can serve as the basis of a breach of the implied covenant of good faith claim. Moreover, QBE's conduct during the investigation and after its denial of coverage may serve as the basis for this claim. While QBE argued at the October 6 hearing that a reasonable claims provider could have denied Heard's claim under the Acts or Decision exclusion without acting in bad faith, the Court finds that Heard has sufficiently alleged additional grounds for her bad faith claim. At the hearing, Heard identified specific allegations, separate from the denial of coverage, that go towards a finding of bad faith. These allegations include QBE making unreasonable demands upon Heard during the investigation and QBE misrepresenting facts concerning its intent to pay Heard's claim, among others. *See* Compl. ¶ 57. For these reasons, the Court DENIES QBE's Motion, as it relates to the breach of the implied covenant of good faith and fair dealing claim.

/ / /

/ / /

### IV. Conclusion

In light of the foregoing reasons, the Court ORDERS as follows:

1. The Court finds that Heard's claim is not excluded by the Acts or Decisions exclusion of the Policy; and
2. QBE's Motion for Judgment on the Pleadings is DENIED as to all of Heard's claims.

**IT IS SO ORDERED.**

Dated: October 13, 2022

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge